UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON DIVISION

| | |
|---|---|
| Piyushkumar Vishnubhai Patel, and Ashaben Piyushkumar Patel, <br><br> Plaintiffs, <br><br> V. <br><br> Kristi NOEM, Secretary of Homeland Security, Washington, D.C. 20528; Pamela BONDI, Attorney General of the United States, 950 Pennsylvania Ave., NW, Washington, D.C. 20520; Kika SCOTT, - "Senior Official performing the duties of Director". Connie NOLAN, - USCIS Service Center Operations Directorate ("SCOPS"); Loren MILLER, Director, USCIS Nebraska Service Center, 850 S. Street, Lincoln, NE 68508; John Does 1-10 (said names being fictitious) <br><br> Defendants. | Case No. <br><br><br> Complaint for Declaratory, Mandamus, and Injunctive Relief 5 U.S.C. § 702 (Administrative Procedures Act) |

## Introduction

1. This is an action for declaratory, mandamus and injunctive relief.

2. The Plaintiffs are residents of Vineland, NJ.

3. On August 29, 2023, Mr. Piyushkumar Vishnubhai Patel (referred to as "Plaintiff one" or "Mr. Patel" hereinafter) reported that a man, later identified as Robert Kelly, (referred to as "Mr. Kelly" hereinafter), entered Pantry 1 Food Mart around 7:00PM. Plaintiff said that he saw Mr. Kelly take a case of whipped cream and exit the store. The Plaintiff reported that he ran after Mr. Kelly and watched him enter a vehicle that was already running and then drove away. The Plaintiff states that he went inside the store and called the police to report the robbery. The Plaintiff estimated that the case of whipped cream Mr. Kelly stole was worth about $350-$400.

4. Plaintiff one stated that the police quickly arrived at the store and took his statement. He said that he showed Police the video footage of the incident, and Police officers stated that they recognized Mr. Kelly.

5. On September 1, 2023, two days after the store was robbed, Mrs. Ashaben Piyushkumar Patel (referred to as "Plaintiff two" or "Mrs. Patel" hereinafter) stated that while she was at work, at a jewelry kiosk in the Cumberland mall, Mr. Kelly approached her. She explained that Mr. Kelly knew she was Mr. Patel's wife because he would see her at Pantry 1 Food Mart during her shifts. Plaintiff two stated Mr. Kelly aggressively asked her why her husband called the police on him. She noted that Mr. Kelly appeared to be intoxicated. She described him as "hyper." She said she ignored his question, but Mr. Kelly became "more aggressive." Plaintiff two stated Mr. Kelly then threatened to kill her husband if he saw him again.

6. Additionally, Plaintiff two stated that Mr. Kelly threatened her, stating that she should go outside the building with him so he could harm her and "really show [her] how to call the police." After Mr. Kelly left, Plaintiff two said she immediately called her husband to inform him about the threats and warn him that Mr. Kelly wanted to hurt him. Plaintiff one said he vigilantly watched the security cameras during his shift to make sure Mr. Kelly did not come to hurt him. He added, "The whole day I was distraught. Someone threatened my life."

7. Plaintiff two stated she was afraid to contact the police to report Mr. Kelly again because last time her husband called the police, Mr. Kelly threatened her and her husband. Plaintiff two further explained, "I didn't want him to put [a] target on me for calling the police." However, ultimately, plaintiffs both decided to report the incident to the police and trusted that the police would protect them. The following week Plaintiff one reported Mr. Kelly's threats. Plaintiff one's interview with the police was recorded. Later that day, Plaintiff one was contacted by the officer assigned to his case and asked for the video footage from the Cumberland Mall. Mr. Patel complied and obtained the footage for the officer.

**Subject Matter Jurisdiction**

8. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1361. The mandamus statute vests original jurisdiction in the federal courts. It provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus." 28 U.S.C. § 1361.

9. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). The statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This action arises under the Immigration and Nationality Act which is a law of the United States.

10. The court has subject matter jurisdiction under 28 U.S.C. § 1346(a)(2) (United States as defendant). This is a civil action against the officers and agencies of the United States founded upon an Act of Congress and a regulation of an executive department.

11. Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

### Venue

12. Pursuant to 28 U.S.C. § 1391(e), venue is proper in the District of New Jersey because the Plaintiffs reside in New Jersey. The statute provides that in an action in which a defendant is an officer or employee of the United States, the action "may ... be brought in any judicial district in which ... the plaintiff resides if no real property is involved in the action." Id. There is no real property involved in this action.

### Parties

13. Plaintiffs, Piyushkumar Vishnubhai Patel and Ashaben Piyushkumar Patel are natives and citizens of India. They were the victims of a serious crime, fully cooperated with the Vineland Police Department and have sought nonimmigrant status under section 101(a)(15)(U)(i) of the Immigration and Nationality Act (hereinafter "INA"), commonly called "the U Visa program".

14. Defendant Kristi NOEM is the Secretary of the Department of Homeland Security and is the head of the U.S. Department of Homeland Security ("DHS") and she has ultimate responsibility for the administration and enforcement of the immigration laws. She is sued in her official capacity.

15. Defendant Pamela BONDI is the Attorney General of the United States and the head of the U.S. Department of Justice ("DOJ"). She shares responsibility for the administration and enforcement of the immigration laws. She is sued in her official capacity.

16. Defendant Kika SCOTT is the "Senior Official Performing the Duties of Director", a component of DHS. In that capacity, she has direct authority over all USCIS policies, procedures, and practices relating to the processing and adjudication of applications for U nonimmigrant status. She is sued in her official capacity.

17. Defendant Connie NOLAN is the Associate Director of USCIS Service Center Operations ("SCOPS"). She exercises authority over USCIS activities related to processing of U nonimmigrant applications. She is sued in her official capacity.

18. Defendant Loren MILLER is the Field Office Director of the USCIS Nebraska Service Center in Lincoln, Nebraska. She exercises authority over USCIS activities related to U nonimmigrant applications. She is sued in her official capacity.

## Legal Framework

### The U Visa Program, INA§ 101(a)(15)(U)

19. On October 28, 2000, Congress created the U Visa program.  See Victims of Trafficking and Violence Prevention Act of 2000 (VTVPA), Pub. L. No. 106-386, Title V, § 1513, 114 Stat. 1464, 1533 (2000).

20. Concerned that "[i]mmigrant women and children are often targeted to be victims of crimes committed against them in the United States" and that "[a]ll women and children who are victims of these crimes committed against them in the United States must be able to report these crimes to law enforcement and fully participate in the investigation of the crimes[,]" Congress acted to establish the U Visa program in order to "strengthen the ability of law

4

enforcement agencies to detect, investigate, and prosecute" certain serious crimes "while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." See VTVPA § 1513(a), 114 Stat. 1533.

21. The U Visa program creates a mechanism for noncitizen victims of serious crimes to safely engage law enforcement and, likewise, for law enforcement to engage immigrant crime victims and immigrant communities to deter, prevent, and prosecute criminal activity for the betterment of the United States.

22. The U Visa was created to strengthen the ability of law enforcement agencies to investigate and prosecute serious crimes and trafficking in persons, while offering protection to victims of such crimes without the immediate risk of being removed from the country. By providing victims of crimes with an avenue for regularization of their immigrant status, the U Visa encourages victims to cooperate with law enforcement agencies. Congress also aimed to strengthen relations between law enforcement and immigrant communities by increasing cooperation and removing some of the fear of deportation held by many undocumented migrants. See, e.g., U and T Visa Law Enforcement Resource Guide, DHS, (January 4, 2016) https://www.dhs.gov/sites/default/files/publications/U-and-T-Visa-Law-Enforcement-Resource%20Guide_1.4.16.pdf.

23. A non-citizen is eligible for status under the U Visa program if (1) he or she suffered substantial physical or mental abuse as a result of having been a victim of one of the enumerated crimes; (2) he or she possesses or possessed information concerning the criminal activity; (3) he or she has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities

5

investigating or prosecuting the criminal activity; and (4) the criminal activity violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States. See INA § 101(a)(15)(U).

24. A statutory cap limits the grant of U Visas to 10,000 per fiscal year. See INA § 214(p)(2)(A); 8 C.F.R. § 214.14(d)(l). The statutory cap only applies to principal applicants and does not apply to derivative applicants. INA § 214(p)(2)(B).

25. A wait list was created by regulations to provide deferred action to an eligible petitioner whenever the statutory cap is reached within a given fiscal year. See New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53027 (Sept. 29, 1995) (codified at 8 C.F.R. § 214.14(d)(2)). Deferred action provides several important protections to petitioners that include, among others, eligibility for work authorization. 8 CFR § 214.14(d)(2) ("USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.").

**The U Visa Administrative Process**

26. The administrative processing to accord U nonimmigrant status to eligible petitioners is tightly prescribed and regulated.

27. First, a petitioner must obtain a certification from a law enforcement official that they were the victims of a crime, the crime is a recognized crime under the U Visa program, and that they were, or is likely to be helpful in the investigation, or prosecution of criminal activity. USCIS has prescribed that law enforcement officials make this certification on a particular form, USCIS Form 1-918 Supplement B, U Nonimmigrant Status Certification. See 8 C.F.R. § 214.14(a)(12).

28. Second, on submission, USCIS makes a completeness check to verify that all required initial evidence is present. The petition must include Form I-918, Petition for U Nonimmigrant Status; Form I-918, Supplement B, U Nonimmigrant Status Certification; a personal statement describing the criminal activity of which the applicant was a victim; and evidence to establish each eligibility requirement.

29. Third, USCIS either adjudicates the petition by according U-nonimmigrant status or, in most cases, places the petitioner on the BFD wait list for an adjudication. See 8 C.F.R. § 214.14(d)(2).

30. If the statutory cap has not been reached, USCIS adjudicates the petition for U nonimmigrant status.

31. If the statutory cap has been reached, USCIS must place the petitioner on the waiting list until an adjudication can be made. 8 C.F.R. § 214.14(d) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such a placement.").

32. Once the individual has been granted deferred action, he or she may apply for and receive employment authorization by submitting Form I-765 to USCIS.

### Bona Fide Screening

33. Congress granted USCIS the authority to grant work authorization for petitioners with pending, bona fide applications. INA § 214(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U)").

34. A bona fide application means an application where there appears to be no instance of fraud in the application, the application is complete, properly filed, contains an LEA

7

endorsement, includes completed fingerprint and background checks, and presents prima facie evidence to show eligibility for U nonimmigrant status. See, e.g., 8 C.F.R. § 214.11(k) (defining "bona fide" for related statutory nonimmigrant program).

### Plaintiff's Victimization

35. Plaintiffs are citizens of India.

36. Plaintiff One was born on July 31, 1987, in Mansa Gandhinagar, India.

37. Plaintiff Two was born on June 1, 1988, in Kukarwada, India.

38. Plaintiffs have lived in the United States for on or about ten years.

39. The Plaintiffs have no close relationship with Mr. Kelly, as he was only a customer of Pantry One Food Mart.

40. On August 29, 2023, Plaintiff One became a witness to a shoplifting crime at the hands of Mr. Kelly. Mr. Kelly stole a box of whipped cream from the store. Shortly after Plaintiff One reported this crime to local police.

41. On or about September 1, 2023, Mr. Kelly approached Plaintiff Two at her employment, and he mocked and threatened her while she was working. Namely, Mr. Kelly mocked Plaintiff One for calling the police against him.

42. Specifically, Mr. Kelly angrily said: "you know your husband called the police on me? The next time I see him I'm going to punch him and knock him down. I'm going to kill him then really give him a reason to call the police."

43. Plaintiff Two ignored Mr. Kelly, which aggravated and angered him more. As a result, Mr. Kelly started shouting derogatory slurs towards Plaintiff Two. He also told her to step outside, indicative of his desire to fight her outside.

44. Plaintiff Two believes she was targeted because she and her husband both work at the Pantry and Mr. Kelly wanted to send a message to Plaintiff One through Plaintiff Two.

### Law Enforcement Cooperation, Investigation

45. On or about August 29, 2023, Plaintiff One called Vineland Police Department, and reported the shoplifting, and he fully cooperated with the officers during the investigation. He answered all of their questions and complied with all requests for information. See I-918, Supplement B, U Nonimmigrant Status Certification. (See Exhibit G)

46. On or around September 8, 2023, both Plaintiffs went to the Vineland Police station to give a report on what happened to Plaintiff Two at the Cumberland Mall. Again, they answered all of the police's questions and fully cooperated with the investigation. (See Exhibit G)

47. Plaintiffs possess relevant information about the crimes and were helpful with the investigation of said criminal activity. (See Exhibit G). Plaintiffs never refused or failed to help the police, and at all times were willing to help in any future investigations.

### The Application for U Nonimmigrant Status

48. Plaintiffs sought U nonimmigrant status to protect themselves.

49. They decided that they wanted the protections offered by U nonimmigrant status. They will be able to work and support their child. Having deferred action or U nonimmigrant status will also create a more secure and certain future for the Plaintiffs because they will not have to be concerned about possible removal from the U.S.

50. The Vineland Police Department certified that Plaintiff one was helpful in the investigation. See Form I-918A U Nonimmigrant Status Certification, (See Exhibit G).

51. On July 16, 2024, Plaintiffs submitted a complete and substantively approvable application for U nonimmigrant status to the USCS Vermont Service Center. 8 C.F.R. § 214.14(c)(l).

52. There is no evidence of fraud in the application and Plaintiffs attached compelling evidence showing eligibility for U nonimmigrant status. (See Exhibit H)

53. On July 16, 2024, USCIS received the Plaintiff's application(s) at the Vermont Service Center. (See Form I-797C, Notice of Action/Receipt Notices Dated August 2, 2024., Exhibits B & C).

54. On September 23, 2024, Plaintiffs complied and attended a biometrics appointment to complete all required background checks. (See Exhibit D).

55. Thereafter Plaintiffs submitted form I-765, Application for Employment Authorization, received, at the Vermont Service Center on July 16, 2024. See Form I-797C, Notice of Action/Receipt Notice, Dated August 2, 2024., (See Exhibit I)

### An Unreasonable Delay

56. Defendants have taken no action on the U-Visa petition since it was properly filed on July 16, 2024, other than issuing receipts and scheduling the biometrics appointments. Since Plaintiffs fingerprints were taken at their biometrics appointments, it appears no further action has been taken by defendants.

57. This delay has caused significant harm to the Plaintiffs, impacting their ability to sustain their livelihoods and provide for their child. They have been unable to obtain work authorization. 8 C.F.R. § 214.14(d).

58. Defendants have a duty to place Plaintiffs on the deferred action waiting list.

59. Defendants' failure to perform such duty for over one year violates said regulation.

### Count I
### Unreasonable Delay in Agency Action
### Bona Fide Work Authorization

60. All previous paragraphs are incorporated as though fully set forth herein.

61. Under INA§ 214(p)(6), the Defendants have an obligation to issue, within a reasonable time, work authorization for individuals who have presented bona fide petitions for U nonimmigrant status.

62. Defendants have failed to issue work authorization to Plaintiffs for more than eight (8) months.

63. Defendants' failure to issue work authorization to Plaintiffs violates INA§ 214(p)(6) and/or 5 U.S.C. § 555(b).

### Request for Relief

**WHEREFORE**, Plaintiffs request that the Court grant the following relief:

A.  Declare that Defendants have a duty to place Plaintiffs on the waiting list for U nonimmigrant status and grant deferred action;

B.  Order Defendants to comply with 8 C.F.R. § 214.14(d)(2) and place Plaintiffs on the U Visa waitlist;

C.  Award Plaintiffs reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

D.  Award all other relief to Plaintiffs that it deems just, equitable, and proper.

Respectfully submitted this 13th day of August 2025,

/s/ John P. Leschak Esq.
Attorney for Plaintiffs